

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT E. MUZIKOWSKI, | ) |
| Plaintiff, | ) <br> ) Case No. 01 C 6721 |
| v. | ) <br> ) District Judge Charles P. Kocoras |
| PARAMOUNT PICTURES CORPORATION, <br> SFX TOLLIN/ROBBINS, INC. and <br> FIREWORKS PICTURES, | ) <br> ) Magistrate Judge Ian H. Levin |
| Defendants. | ) |

TO:  THE HONORABLE CHARLES P. KOCORAS, CHIEF JUDGE
UNITED STATES DISTRICT COURT

## REPORT AND RECOMMENDATION

This cause comes before the court for a recommendation on the appropriate sanction award under a motion for sanctions granted by the District Judge. For the reasons herein set forth, the court recommends that the appropriate sanction award be $50,915.25.

## BACKGROUND

On June 9, 2004, the District Judge granted defendants Paramount Pictures Corporation, SFX Tollin/Robbins, Inc. and Fireworks Pictures (collectively referred to as "Paramount") motion to compel responses to its contention interrogatories and ordered plaintiff Robert E. Muzikowski (hereinafter "Muzikowski") to identify those documents which he intended to rely on at trial. (Dkt. No. 66, Tr. of 6/9/04 at 8-9.) Muzikowski subsequently served two sets of supplemental responses on Paramount on or about June 24, 2003 and June 30, 2004; however, his responses did not comply with the District Judge's June 9, 2004 order compelling discovery because he did not identify those

documents which he intended to rely on at trial. (Tr. of 7/1/04 at 5-6.) Rather, Muzikowski, in his June 24, 2004 supplemental responses, identified many of the documents produced in this litigation using broad descriptions of categories of documents (Pl.'s Supp. Resps. of 6/24/04) and indicated in a follow-up letter that his responses identified those documents related to various contentions requested by Paramount's interrogatories and "not the much narrower request for identification of documents that Mr. Muzikowski intends to rely upon at trial." (Roche ltr. of 6/25/04.) In Muzikowski's June 30, 2004 second set of supplemental responses, he identified between 20,000 and 47,000 pages of documents which he subsequently reported he "may rely upon" at trial. (See Pl.'s Supp. Resps. of 6/30/04, Tr. of 7/1/04 at 5, 8).

On July 1, 2004, the District Judge referred this matter for resolution of "whether or not there has been good faith compliance with the court's last order on the part of the plaintiff to make a realistic assessment of the documents intended to be used at trial, if a trial were to be had in this case." (Dkt. Nos. 74, 76.) Prior to oral argument and this court's ruling on the referred matter, Muzikowski served another set of supplemental responses on Paramount on or about July 12, 2004 and stated in a cover letter that the documents identified are "documents plaintiff intends to rely upon for possible use at trial." (Roche ltr. & Pl.'s Supp. Resps. of 7/12/04.) In this submission, Muzikowski appeared to have identified more pages of documents than he had in his June 30, 2004 supplemental responses.[1] (Cf. Pl.'s Supp. Resps. of 6/30/04 to Pl.'s Supp. Resps. of 7/12/04.) Subsequently, on August 2, 2004, Muzikowski sent a letter to this court identifying errors in his July 12, 2004 submission and indicating that "in response to the Court's order of June 9, 2004" the

---

[1] The number of pages of documents identified in Muzikowski's July 12, 2004 submission, however, may have been 15,538 not the 20,000 to 47,000 document pages estimated at the July 1, 2004 status hearing. (Chung ltr. of 8/2/04.)

2

number of pages of documents responsive to Paramount's contention interrogatories totaled 14,599. (Chung ltr. of 8/2/04 at 3.) Muzikowski further stated that "[t]he total number of pages produced in discovery is roughly 90,000." (*Id.*)

On August 5, 2004, this court found that Muzikowski had not in good faith complied with the District Judge's June 9, 2004 order. *Muzikowski v. Paramount Pictures Corp.*, No. 01 C 6721, 2004 WL 1770279, at *2 (N.D. Ill. Aug. 5, 2004). Specifically, this court held:

> After review, and making a realistic assessment, the court finds, respectfully, that neither by July 1, 2004 nor, importantly, even to the present date has Plaintiff complied in good faith with the District Judge's order to identify the documents Plaintiff "intends" to use at trial. The District Judge's July 1, 2004 minute order and transcripts of the two hearings before that court make it clear that the Plaintiff was mandated by the District Judge to identify documents that he intends to use and "intends to offer" [footnote omitted] at trial. Instead, the Plaintiff in its last supplemental response of July 12, 2004, identified, unresponsively, only documents that he intends to rely on for "possible use at trial." [footnote omitted.] Furthermore, while the Plaintiff did whittle the list down from 90,000 pages of documents, this court does not deem a listing of 14,599 pages of documents to be a good faith assessment of the documents that, realistically, will be employed at trial by the Plaintiff. *Muzikowski*, 2004 WL 1770279, at *2.

The District Judge adopted this court's finding and, on August 9, 2004, Muzikowski filed a statement of intended compliance indicating he would "identify specifically those documents that [he] intends to use and intends to offer at the trial of this action" by August 23, 2004. (Pl.'s Statement Of Intended Compliance In View Of The Magistrate Judge's Finding at 6, Dkt. No. 85.) Muzikowski's August 23, 2004 submission, however, identified a large number of irrelevant documents and broad categories of documents which failed to comply with the court's June 9, 2004 order. (Berman Decl. of 1/26/05 at ¶¶ 8, 9.) Subsequently, on October 12, 2004, Muzikowski served a revised response identifying approximately 1,000 pages of documents that were a more realistic assessment of the documents he intends to rely on at trial. (*Id.* at ¶ 12.)

3

Paramount next moved for sanctions under Rule 37(b)(2) and the District Judge granted the motion finding that "Muzikowski's persistence in the unfounded position that the course of action pursued in this case was a reasonable interpretation of express in-court directions constitutes willful disobedience of court orders that we simply cannot countenance." (Fed.R.Civ.P.37(b)(2), Dkt. Nos. 89, 94.) The District Judge then referred the matter of determining the appropriate amount of sanctions to this court. (*Id.*)

## LEGAL STANDARD

Rule 37(b)(2) vests a court with authority to sanction a party and that party's attorneys for failing to obey a court order. Fed.R.Civ.P.37(b)(2). Under Rule 37(b)(2), one sanction option that may be used by a court is for it to "require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure." Fed.R.Civ. P. 37(b)(2)(E).

In order to calculate reasonable attorneys' fees, a court must first determine the lodestar amount. *Stark III v. PPM America, Inc.*, 354 F.3d 666, 674 (7th Cir. 2004); *Mathur v. Bd. of Trustees of Southern Illinois Univ.*, 317 F.3d 738, 742 (7th Cir. 2003). The lodestar is "the product of an attorney's reasonable hourly rate and the number of hours reasonably expended." *Stark III*, 354 F.3d at 674 (*citing Hensley v. Eckerhart*, 461 U.S. 424, 433-34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). It is well-settled that "[t]he party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999)(*citing Hensley*, 461 U.S. at 433, 103 S.Ct. 1933, 76 L.Ed.2d 40).)

## ANALYSIS

4

Paramount seeks reimbursement of attorneys' fees from Muzikowski and his attorneys in the amount of $50,915.25.[2] (Defs.' Reply at 1-2.) Specifically, Paramount avers that its attorneys spent about 150 hours reviewing and analyzing Muzikowski's five non-complying submissions and trying to obtain compliance with the District Judge's June 9, 2004 court order. (*Id.*) Accordingly, Paramount contends that a monetary sanction in the amount of $50,915.25 is warranted given Muzikowski's willful disobedience of the court order. (*Id.*)

Muzikowski, on the other hand, asserts that the amount of sanctions should be limited to a *de minimus* amount of no more than $5,000.00. (Pl.'s Sur-Reply at 2.) Specifically, Muzikowski contends that the sanction amount should be limited because Paramount's fee petition is deficient. (*Id.* at 1-2.) Muzikowski therefore avers that Paramount has failed to establish that its attorneys hourly rates and the number of hours its attorneys worked in reviewing and analyzing his submissions were reasonableness as required by Federal Rule of Civil Procedure 37. (*Id.*)

I. **HOURS**

The court must first determine whether the number of hours expended by Paramount's attorneys in reviewing and analyzing Muzikowski's non-complying submissions were reasonable. Thus, as an initial matter, the court notes that Muzikowski served five non-complying responses to Paramount's contention interrogatories over a three month period which identified thousands of pages of documents. According to Paramount's Summary of Fees Incurred in Connection with Plaintiff's Responses to Court Order (hereinafter "Summary of Fees"), Paramount's attorneys spent a total of 179.75 hours reviewing the subject thousands of pages of documents identified in

---

[2]Paramount incurred $56,572.50 in attorneys' fees; however, it reduced this figure by ten percent to $50,915.25. (Ex. H attached to Defs.' Mot. for Sanctions at 7.)

5

Muzikowski's submissions and on activities including telephone conferences, letter writing and court hearings in an attempt to gain compliance with the District Judge's June 9, 2004 court order. (Ex. H attached to Defs.' Mot. for Sanctions at 1-7.)

Next, as set forth by Paramount, each time Paramount received a non-complying submission from Muzikowski, its attorneys reviewed and analyzed the documents identified in the submission. (Berman Decl. of 1/26/05 at ¶ 4.) To expedite the review process, Paramount's attorneys created a chart summarizing the documents identified in one of Muzikowski's initial submissions. (*Id.*) Paramount's attorneys then used the chart to try to avoid re-reviewing documents that had been previously identified. (*Id.*) However, because Muzikowski did not always identify the documents in the same manner, it was not always possible for Paramount's attorneys to quickly determine if an identified document had been previously listed. (*Id.*)

With regard to the number of pages of documents reviewed by Paramount's attorneys, it is difficult if not impossible for the court to ascertain the precise number of pages of documents reviewed because neither Muzikowski nor Paramount have provided the court with this figure. Rather, the briefs and court hearings contain references to various numbers of pages of documents. For example, at the July 1, 2004 status hearing held before the District Judge, Muzikowski claimed that his June 30, 2004 submission contained 20,000 pages of documents and Paramount claimed the same submission contained 47,000 pages of documents. (Tr. of 7/1/04 at 5, 8.) The court next notes that Muzikowski's July 12, 2004 submission *probably* identified 15,538 pages of documents; however, it was later corrected on August 2, 2004 to reflect 14,599 pages of documents. (*See* Chung ltr. of 8/2/04.)(emphasis added.) With regard to Muzikowski's June 24, 2004 and August 23, 2004 submissions, the number of pages of documents were not identified. (*See* Pl.'s Supp. Resps. of

6/24/04 & 8/23/04.)

Because the court is unable to discern the total number of pages of documents reviewed by Paramount, the reasonableness of the 179.75[3] hours Paramount expended in reviewing Muzikowski's submissions will be based on the 14,599 pages of documents identified in Muzikowski's attorney's August 2, 2004 letter since this is the only evidence presented that specifies a precise number of pages of documents upon which the court can rely. In order to determine whether the number of hours expended by Paramount's attorneys is reasonable in light of the number of pages of documents reviewed, the court has decided that it is appropriate to calculate the average number of minutes it took for Paramount's attorneys to review a document page. Accordingly, Paramount's attorneys reasonably spent an average of 7.39 minutes reviewing and analyzing each document page.[4]

The court finds that the amount of time Paramount expended is reasonable especially in light of the fact that its attorneys realistically reviewed thousands of pages of documents far in excess of the 14,599 figure. It is possible and very likely that Paramount's attorneys reviewed and analyzed more than 90,000 pages of documents which is the number of pages produced in the discovery phase of this case. *Muzikowski*, 2004 WL 1770279, at *2. Thus, given the substantial number of pages of documents reviewed and re-reviewed by Paramount's attorneys each time a non-complying

---

[3]While Paramount argues its attorneys spent about 150 hours to review and analyze Muzikowski's noncomplying submissions, the court is unable to derive this same figure based on the time descriptions on Paramount's Summary of Fees Incurred in Connection with Plaintiff's Responses to Court Order. (*See* Defs.' Reply at 8.) Therefore, the court has decided to use the total number of hours (179.75) expended by Paramount's attorneys which includes not only those hours spent reviewing and analyzing Muzikowski's submissions, but those spent on related activities including telephone conferences, letter writing and court hearings which were necessary to gain compliance with the District Judge's June 9, 2004 court order.

[4]The 7.39 minute figure was calculated by dividing 10,785 minutes (179.75 hours times 60 minutes) by 14,599 pages of documents.

submission was received (Berman Decl. of 1/26/05 at ¶ 4), Muzikowski's assertions regarding excessive and duplicative time spent on document review on the part of Paramount is unfounded. (Pl.'s Resp. at 7-8, Pl.'s Sur-Reply at 9-11.) Importantly, it bears noting that at the August 4, 2004 hearing held on whether Muzikowski had in good faith complied with the District Judge's June 9, 2004 court order, Muzikowski's attorneys informed the court that:

> "[W]e set upon . . . spending literally hundreds of hours culling through about 100,000 pages of documents that have been produced in this case and then matching up those documents with the nine various contentions." (Tr. of 8/4/04 at 5.)

Accordingly, it appears that Muzikowski's attorneys may have spent more time than Paramount's attorneys reviewing the same thousands of pages of documents.[5]

Muzikowski's further contention that Paramount's use of four attorneys (two partners and two associates) and one paralegal to perform the same task of reviewing documents entailed duplicative efforts is without merit given the fact that Paramount principally divided the task of reviewing the thousands of pages of documents between two associates. (Pl.'s Resp. at 7-8, Berman Decl. of 1/26/05 at ¶ 5.) These associates reported the results of their review to Paramount's lead counsel who reviewed some of the more egregious examples they found and then handled the matters in court. (Berman Decl. of 1/26/05 at ¶ 5; Defs.' Reply at 9.) It also bears noting that Muzikowski similarly engaged two attorneys and paralegals in reviewing documents and, in fact, one of his attorney's reported to the court at the August 4, 2004 hearing held to determine whether Muzikowski

---

[5]Muzikowski asserts that duplicative and excessive billing practices on the part of Paramount were not limited to document review. (Pl.'s Sur-Reply at 11.) For example, Muzikowski contends that Paramount billed for its partners performing such menial tasks as speaking with a court clerk as well as for two or more attorneys to prepare for and attend court hearings. (*Id.*) The court finds, however, that Muzikowski's assertion is without merit and the amount of time Paramount billed for these activities is reasonable.

had in good faith complied with the District Judge's June 9, 2004 court order that "we spent countless man hours in our office with two lawyers, Mr. Chung and another associate at our office and paralegals in trying to put this list together." (Tr. of 8/4/04 at 62.) Therefore, Muzikowski's attorneys appear to have used similar staffing levels to accomplish the task of reviewing documents.

Muzikowski's final assertion that Paramount's time entries or descriptions in its Summary of Fees are vague and unrelated to the contention interrogatories is unavailing. (Pl.'s Resp. at 8-9, Pl.'s Sur-Reply at 11-12.) A review of the time entries in Paramount's Summary of Fees shows that the descriptions are appropriate and fairly comparable to those used in other cases where the sanction was an award of attorneys' fees. *See e.g., Plump v. Kraft Foods N. Am., Inc.*, No. 02 C 7754, 2003 WL 23019166, at *2 (N.D. Ill. Dec. 23, 2003)(noting time entries delineating general descriptions of work spent by attorneys on motion to compel and for sanctions). More importantly, Paramount has provided two declarations testifying to the fact that the hours of work performed by its attorneys and paralegal delineated in its Summary of Fees is that which entailed the review of Muzikowski's five non-complying submissions as well as those additional activities which were needed to secure Muzikowski's compliance with the District Judge's June 9, 2004 court order. (Berman Decl. of 1/26/05 at ¶ 3, Berman Decl. of 10/25/04 at ¶ 4.) Therefore, the delineation of the hours worked and corresponding time entries describing the type of work performed by Paramount's attorneys listed in its Summary of Fees is directly related to Muzikowski's failure to comply with the June 9, 2004 court order and, as a consequence, is appropriate and reasonable.

The court also notes that Paramount is not seeking reimbursement for $20,908.12[6] in

---

[6]Paramount incurred $23,231.25 in attorneys' fees; however, it reduced this figure by ten percent to $20,908.12. (Ex. J1 to Defs.' Reply at 4.)

attorneys' fees which entailed 69.50 hours of work by its attorneys in preparing its motions to compel and for sanctions even though it is entitled to these fees. (Defs.' Reply at 2, Berman Decl. of 1/26/05 at ¶ 6.) Fed.R.Civ.P. 37(a)(4)(A); Fed.R.Civ.P. 37(b)(2)(E); *see also Plump*, 2003 WL 23019166, at *2 (awarding fees for preparing, drafting and filing motion for sanctions, memorandum in support of motion for sanctions and reply brief).

Accordingly, the court finds that the number of hours expended by Paramount reviewing and analyzing Muzikowski's non-complying submissions and on activities related to gaining compliance with the District Judge's June 9, 2004 court order were reasonable.[7]

## II. HOURLY RATE

Next, the court must decide whether Paramount's requested hourly rates are reasonable. *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933, 76 L.Ed.2d 40. A reasonable hourly rate is calculated in accordance with the prevailing "market rate" for the services rendered. *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996)(*citing Missouri v. Jenkins*, 491 U.S. 274, 283, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989)). An attorney's market rate is the rate charged for similar services by attorneys in the community of "reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *see also Bankston v. State of Illinois*, 60 F.3d 1249, 1256 (7th Cir. 1995). "The best evidence of the market value of legal services is what people pay for it." *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996)("Indeed, this is not

---

[7]It bears noting that Paramount testified to the fact that the total amount of time and fees claimed is less than the actual amount of time and fees Paramount's attorneys expended in evaluating and addressing Muzikowski's interrogatory responses. (Berman Decl. of 10/25/04 at ¶ 5.)

'evidence' about market value; it *is* market value.")(emphasis in original). The burden of proving the market rate is on the fee applicant. *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 518-19 (7th Cir. 1993).

Muzikowski contends that Paramount has failed to establish that its hourly rates are reasonable and reflect the prevailing market rate. (Pl.'s Sur-Reply at 3-8.) For example, Muzikowski contends that an attorney's affidavit alone is not enough to establish the market rate for that attorney's services. *Spegon v. The Catholic Bishop of Chicago*, 175 F.3d 544, 556 (7th Cir. 1999)(*citing Blum*, 465 U.S. at 895 n.11, 104 S.Ct. 1541, 79 L.Ed.2d 891)("[a]n attorney's self-serving affidavit alone cannot satisfy the plaintiff's burden of establishing the market rate for that attorney's services.") Moreover, Muzikowski points out that the Supreme Court has stated that in order to aid a court in determining the appropriate market rate for the services of an attorney, "the burden is on the fee applicant to produce satisfactory evidence–in addition to the attorney's own affidavit–that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonable comparable skill, experience, and reputation." (*Id.*)

The court finds Muzikowski's contention unavailing because Paramount has produced the declaration of its lead attorney which establishes that its hourly rates are reasonable and reflect the applicable market rate. This declaration states that the hourly rates charged to Paramount are Jenner & Block's standard hourly rates, less a ten percent discount.[8] (Berman Decl. of 1/26/05 at ¶ 2.) Moreover, the declaration sets forth that Paramount has paid the invoices totaling $50,915.25 in full. (*Id.*)

---

[8] Jenner & Block's partners are paid at the rates of $405.00 and $450.00 an hour; its associates are paid at the rates of $250.00 and $280.00 an hour; and its paralegal is paid at a rate of $100.00 an hour. (Ex. H attached to Defs.' Mot. for Sanctions at 1-7.)

11

Next, as indicated by Seventh Circuit case law, the best evidence that a firm is charging a reasonable rate is the payment of the bills by the client. *Balcor Real Estate Holding, Inc.*, 73 F.3d at 153 ("the best evidence of the market value of legal services is what people pay for it."); *see also Whitehead v. Gateway Chevrolet, et al.*, No. 03 C 5684, 2004 WL 1073642, at *5 (N.D. Ill. May 7, 2004)[9]. As stated, Paramount has provided reliable evidence, the declaration of Paramount's lead attorney, that Paramount has paid its bill in full. Accordingly, this evidence satisfactorily proves market rate.[10] *Whitehead*, 2004 WL 1073642, at *5.

The court finds that the appropriate sanction herein is for Muzikowski and his attorneys to pay Paramount the full amount of attorneys' fees it incurred and paid in reviewing and analyzing Muzikowski's five non-complying submissions and on those activities including telephone conferences, letter writing and court hearings which were required by Paramount in order to gain compliance with the District Judge's court order. *See e.g., Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1382 (7th Cir. 1993)("an award of sanctions must be proportionate to the circumstances surrounding the failure to comply with discovery.") Accordingly, in light of Muzikowski's "willful disobedience" of the District Judge's June 9, 2004 court order as well as his contumacious conduct and dilatory tactics which lead to this court's August 5, 2004 finding that Muzikowski had not

---

[9]The district court adopted the magistrate judge's report and recommendation in *Whitehead v. Gateway Chevrolet et al.*, No. 03 C 5684, 2004 WL 1459478, at *5 (N.D. Ill. June 29, 2004).

[10]Muzikowski's statement that the Seventh Circuit has also expressed that the hourly rate must be capped at the prevailing market rate for attorneys engaged in the type of litigation in which the fee is being sought (*Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996)), is unavailing, particularly given the fact, as stated, that Paramount is not seeking reimbursement for the $23,231.25 (reduced by ten percent to $20,908.12) in paid attorneys' fees which entailed 69.50 hours of work performed by its attorneys in preparing its motions to compel and for sanctions herein. (pp. 9-10 *supra*).

complied in good faith with the District Judge's order, the court recommends that the reasonable amount of the sanctions be $50,915.25.

## CONCLUSION

In view of the foregoing, the court recommends that the appropriate sanction figure be $50,915.25.

**ENTER:**

*/s/ Ian H. Levin*

**IAN H. LEVIN**
**United States Magistrate Judge**

**Dated: February 25, 2005**

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the Magistrate Judge's Report and Recommendation. *See* Fed.R.Civ.72(b); 28 U.S.C. § 636(b)(1)(B); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 329 (7th Cir. 1995); *The Provident Bank v. Manor Stell Corp.*, 882 F.2d 258 (7th Cir. 1989).

**Copies Have Been Delivered
In Open Court or Mailed To:**

| | |
|---|---|
| Michael B. Roche | Debbie L. Berman |
| Schuyler, Roche & Zwirner | Jenner & Block, LLC |
| 130 East Randolph Street | One IBM Plaza |
| Suite 3800 | 330 North Wabash Avenue |
| Chicago, IL 60601 | 40th Floor |
| Attorney for Plaintiff | Chicago, IL 60611 |
| | Attorney for Defendants |